IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDY WARREN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4185-M-BF |
| | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC. AND | § | |
| AMERICAN BROKERS CONDUIT | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this *pro se* case has been referred for pretrial management.

Before the Court is *Defendant's Motion to Dismiss Plaintiff's First Amended Petition and Brief in

Support of Same*, filed October 23, 2013 (doc. 6).  Based on the relevant filings and applicable law,

the motion should be **GRANTED**.

**I.  BACKGROUND**

This action involves the attempted foreclosure of real property located at 4131 Buena Vista

Street, Dallas, Texas 75204 (the Property).  (Am. Pet. (doc. 1-2) at 16.)[1]  Randy Warren (Plaintiff)

sues Mortgage Electronic Registration Systems, Inc. (MERS) and American Brokers Conduit

(American Brokers) (collectively, Defendants) (*Id.* at 15.)

On or about September 20, 2006, Plaintiff obtained a home equity loan in the amount of

$255,200.00 from American Brokers.  (doc. 6-1 at 1.)  He executed a promissory note and a deed

of trust securing the note in American Brokers's favor.  (*Id.* at 1, 14-15.)    The deed of trust

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page
numbers at the bottom of each filing.

identified American Brokers as "Lender," and it named MERS as the nominee for Lender and its

successors and assigns and as the beneficiary of the deed of trust.  (*Id.* at 1.)  The deed of trust also

granted MERS the right to exercise all of the interests Plaintiff granted Lender, including foreclosing

and selling the Property upon default and releasing and canceling the deed of trust. (*Id.* at 3.)

## A.   **The First Lawsuit**

Plaintiff apparently defaulted on his loan, and Bank of America (BOA), assignee of the note

and deed of trust,[2] attempted to foreclose on the Property by filing a notice of substitute trustee sale.

*See Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *1–2 (N.D. Tex.

June 19, 2012), *rec. adopted*, 2013 WL 1131252 (N.D. Tex. Mar. 19, 2013).  On December 6, 2011,

Plaintiff sued BOA in state court, disputing its authority to declare a default, accelerate the debt,

appoint a substitute trustee, or conduct a foreclosure sale.  *Id*.  Among other things, he alleged that

MERS could not assign the note or deed of trust because it was not a party to, and never had a

beneficial interest in, the note.  *Id*.  Alleging that the note was "securitized," he claimed BOA was

not the owner of the note or deed of trust and had no right to foreclose on the Property.  *Id.* He

asserted a claim to quiet title and requested declaratory judgment and injunctive relief to restrain

BOA from foreclosing and evicting him from the Property.  *Id.*

BOA removed the action to federal court based on diversity jurisdiction and later moved to

dismiss the complaint for failure to state a claim.  *Id.* at *2.  The Court granted BOA's motion and

dismissed Plaintiff's complaint with prejudice on March 19, 2013.  *See Warren v. Bank of Am., N.A.*,

No. 3:11-CV-3603-M, 2013 WL 1131252 (N.D. Tex. Mar. 19, 2013).   The judgment dismissing

---

[2] MERS assigned the note and deed of trust to Countrywide Home Loans Servicing, L.P. (Countrywide) in
December 2008.  *See Warren*, 2012 WL 3020075, at *1.   Countrywide subsequently came to be known as BAC
Home Loans Servicing L.P. (BAC), and BOA became a successor by merger to BAC. *Id*.

Plaintiff's complaint was affirmed by the Fifth Circuit on May 6, 2014. *See Warren v. Bank of America, N.A.*, No. 13-1-353, 2014 WL 1778994 (5th Cir. May 6, 2014).

**B.      The Second Lawsuit**

On March 15, 2013, four days prior to the dismissal of his first lawsuit, Plaintiff filed another action in state court to restrain BOA from conducting the foreclosure sale scheduled for April 2, 2013, and evicting him from the Property. *Warren v. Bank of America, N.A.*, No. 3:13-cv-1135, 2013 WL 8177096, at *1 (N.D. Tex. Nov. 15, 2013), *rec. adopted*, 2014 WL 1315855 (N.D. Tex. March 27, 2014). He contended, among other things, that the Property's appraised fair market value in 2006 and prior years "never exceeded $249,500.00", according to the Dallas Central Appraisal District (DCAD). *Id.* He claimed his home equity loan violated the Texas Constitution because it was more than 80 percent of the Property's value. *Id.*

Although the petition did not formally list any substantive claims, Plaintiff's request for injunctive relief contained allegations that were liberally construed as claims for wrongful foreclosure and violations of the Tex. Const. art. XVI, § 50(a)(6)(B), the Fair Debt Collection Practices Act (FDCPA), and the Texas Debt Collection Practices Act (TDCPA). *Id.* at 2.

On March 18, 2013, BOA removed the action to federal court based on diversity jurisdiction, and it later moved to dismiss the complaint for failure to state a claim. *Id.* The Court granted BOA's motion and dismissed Plaintiff's complaint with prejudice on March 27, 2014. *Warren v. Bank of America,* No. 3:13-cv-1135, 2014 WL 1315855, at *6 (N.D. Tex. March 27, 2014).

**C.      The Current Lawsuit**

On September 9, 2013, approximately 6 months prior to the dismissal of the second lawsuit, Plaintiff filed this action in state court. His amended petition alleges that neither MERS and

American Brokers nor "the Lender's assigns" are the holder of the note, and the deed of trust is "invalid and of no force or effect". (doc. 1-2 at 17.) It also alleges that the home equity loan violated the Texas Constitution because it was more than 80 percent of the Property's value, and it violated "various other specific requirements and restrictions pertinent to home equity loans." (*Id.*)

Although the first amended petition does not formally list any substantive claims, it contains allegations that can be liberally construed as a cause of action for quiet title. (*See id.* at 17.) It also requests declaratory relief. (*Id.* at 15, 17.)

On October 16, 2013, MERS removed the action to federal court based on diversity jurisdiction. (doc. 1.) On October 23, 2013, MERS moved to dismiss Plaintiff's first amended complaint. (doc. 6.) With a timely-filed response (doc. 9) and a timely-filed reply (doc. 10), the motion is now ripe for recommendation.

## II. MOTION TO DISMISS

MERS moves to dismiss Plaintiff's first amended petition under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 6.)[3]

### A. <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert denied*, 530 U.S. 1229 (2000); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). It is

---

[3]MERS also moves to dismiss Plaintiff's claims in the first amended petition under Rule 12(b)(6) based on res judicata, collateral estoppel, and claim-splitting. (doc. 6 at 11-16.) Because Plaintiff's claims are subject to dismissal with prejudice for failure to state a claim, it is unnecessary to reach these additional grounds.

well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*,

550 U.S. at 570.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are [also] considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Here, MERS has attached to its motion a copy of the deed of trust. (doc. 6-1.) The deed of trust is referenced in Plaintiff's first amended petition and is central to his theory of the case; it is therefore considered part of the pleadings. *See Collins*, 224 F.3d at 499. Conversion of MERS's motion to dismiss into a motion for summary judgment is unnecessary. *See id.*; *Katrina Canal*

*Breaches Litig.*, 495 F.3d at 205.

**B.**     **Assignment Claims**

Plaintiff alleges that the deed of trust, "under which the Defendants, or the Lender or the Lender's purported assigns, asserts an interest that interferes with Plaintiff's title, although appearing valid on its face, is in fact invalid and of no force or effect." (doc. 1-2 at 17.)  He further alleges that neither the Defendants nor "[American Brokers's] assigns" is the holder of the note.  (*Id.*)

MERS contends that Plaintiff's suit to quiet title is based on his "completely meritless" theories that MERS "could not convey a beneficial interest via an assignment to [BOA], and that MERS was required to also be an owner and holder of Plaintiff's promissory note."  (doc. 6 at 16.) MERS argues that Plaintiff's claim to quiet title must be dismissed because MERS was a valid beneficiary and therefore not required to be the owner or holder of the note in order to assign an enforceable interest, and Plaintiff lacks standing to challenge MERS's assignment. (doc. 6 at 18.)

**1.**     ***"Holder of the Note" Claim ("Split-the-Note" Theory*)**

Liberally construed, Plaintiff's allegations implicate the "split-the-note" theory.  *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *2 (N.D. Tex. Oct. 3, 2012).  The "split-the-note" theory states "that a transfer of a deed of trust by way of MERS 'splits' the note from the deed of trust, thus rendering both null.  *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013).   In order to foreclose, according to the theory, a party must hold both the note and the deed of trust."  *Id.* (citations omitted).

The split-the-note theory has been widely rejected by courts in Texas.  *See Martins*, 722 F.3d at 254–55.  "Texas courts have refused to conflate foreclosure with enforcement of a promissory note."  *Reardean v. CitiMortgage, Inc.*,  No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex.

July 25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug.30, 2012, no pet.) (mem. op.).  "Where a debt is 'secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations.'" *Martins*, 722 F.3d at 255 (quoting *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.–Corpus Christi 2002, pet. denied).

Courts have held that where MERS, a "book entry system", i.e., a "mortgagee", "is given the power of sale under the deed of trust, then it has the power of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012).[4]  "MERS also has the authority to transfer the power of sale *by assigning the deed of trust*." *Id.* (emphasis added); *accord Enis*, 2012 WL 4741073, at *2 ("Because under the deed of trust MERS held the power of sale, BOA received that power when it was assigned the deed of trust.").  Moreover, courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other because they "must be read . . . and construed together as a single instrument."  *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec.adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc.v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal

---

[4]A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).

quotations omitted); *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) (same) (listing cases).

Here, MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust. *See* Tex. Prop. Code Ann. § 51.0001(4)(A)–(B); (*see also* doc. 6-1 at 1). When it assigned the deed of trust, the assignee (Countrywide) became the new "mortgagee" because it was the new beneficiary of the deed of trust and "the last person to whom the security interest ha[d] been assigned of record." *See* Tex. Prop. Code § 51.0001(4)(A),(C); (*see also* doc. 6-1 at 2). As the new mortgagee, Countrywide had all of the rights that Plaintiff granted American Brokers under the deed of trust, including the power of sale on default. *See id.*; (*see also* doc. 6-1 at 2–3). Countrywide could exercise that right without possessing or producing the original promissory note. *See Martins*, 722 F.3d at 255; *Asonibe v. Flagstar Bank, FSB*, No. 3:12-CV-2113-M BH, 2013 WL 1828842, at *6 (N.D. Tex. Apr. 5, 2013), *rec. adopted*, 2013 WL 1831747 (N.D. Tex. Apr. 30, 2013) ("As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of trust."). Countrywide's assignees were entitled to the same rights. *See* Tex. Prop. Code § 51.0001(4)(A),(C); (*see also* doc. 6-1 at 2-3). Accordingly, to the extent Plaintiff premises his quiet title claim on his "split-the-note" theory, MERS's motion to dismiss the claim should be granted.

> **2.    *Standing to Foreclose***

Plaintiff's allegations can also be liberally construed as challenging MERS's assignment of the note and deed of trust. Plaintiff's response clarifies his allegation that MERS lacks authority to assign the note and deed of trust to third parties. (*See* doc. 9 at 7.)

Several district courts in Texas have held that "borrowers do not have standing to challenge

the assignments to their mortgages because they are not parties to those assignments. *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2013 WL 4900962, at *2 (N.D.Tex. Oct. 15, 2012) (collecting cases); *see also Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D.Tex. June 26, 2012); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp.2d 616, 623 (N.D.Tex. 2011) ("Plaintiffs do not have standing to challenge the assignments because they were not a party to those assignments.")(quoting *Eskeridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D.Tex. Feb. 24, 2011).

Citing Texas law, however, some federal courts have recognized two exceptions:  (1) the obligor of an assigned "claim may defend [a] suit brought thereon on any ground which renders the assignment void, but ... not ... voidable," and (2) "under very limited circumstances, ... a defendant sued on a negotiable instrument [may] assert defenses and claims held by others."  *Kramer*, 2012 WL 3027990, at *4-5 (citing to *Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.-Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-00905-DAE, 2013 WL 1773670, at *5 (W.D. Tex. Apr. 25, 2013); *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012).   A debtor can challenge a void assignment "because a void assignment would not pass title, and the debtor has an interest to insure [*sic*] himself that he will not have to pay the same claim twice." *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *8 (W.D. Tex. Feb. 20, 2013) (citation omitted); *accord Tri–Cities Const., Inc.*, 523 S.W.2d at 430.   With respect to the assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract

10

transfers the deed to the assignee—including the rights contained in it—subject to the rights of the assignor to set it aside upon proof [that] the contract was executed improperly." *Puente,* 2012 WL 4335997, at *6 n. 14 (citing to *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942)); *see also Glass*, 330 S.W.2d at 537 (distinguishing between a void and a voidable assignment).[5]  In *Kramer*, the court held that the plaintiff could not challenge the assignment of the deed of trust because neither of the two exceptions to the general rule that borrowers do not have standing to challenge the assignments of their mortgage applied.[6]  2012 WL 3027990, at *5.  It found that in foreclosing on the plaintiff's property, the "Defendants did not sue [the plaintiff] at all, and even if they had, their suit would have been on the deed of trust, not the ...promissory note...[and] there [was] no suggestion [he] [was] being put in a position where he [would] have to pay the same claim twice." *Id*.

As in *Kramer*, Plaintiff does not allege that MERS actually sued him on the note or put him in a position where he will have to pay the same claim twice.  Because he is not a party to the assignment, he does not have standing to challenge the assignment.  Even assuming he has standing, Texas law and the express terms of the deed of trust make clear that MERS had the authority to assign the deed of trust.  Where the deed of trust expressly names MERS as a beneficiary and nominee for the lender, it has authority to assign the deed of trust.  *See Lamb v. Wells Fargo Bank, N.A.*, 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012); *Dempsey v. U.S. Bank Nat'l*, 2012 WL

---

[5]  "This rule accords with [the] principle of contract law" that a "void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced."  *Rodriguez*, 2013 WL 1773670, at *5 (citing 17A C.J.S. Contracts § 169).

[6]The two exceptions cited by the *Kramer* court are: (i) an obligor of an assigned claim may defend a suit brought against him on any ground which renders the assignment void, and (ii) under very limited circumstances, a defendant sued on a negotiable instrument may assert defenses and claims held by others.  *See Kramer*, 2012 WL 3027990, at *5.

2036434, at *5 (E.D. Tex. Jun. 6, 2012) (citing *Eskeridge*, 2011 WL 2163989, at *5).

To the extent Plaintiff's quiet title claim is based on his challenge to MERS's assignment of the note and deed of trust, MERS's motion to dismiss the quiet title claim on that basis is granted.

## C.   **Texas Constitution**[7]

MERS also seeks dismissal of Plaintiff's claim that the home equity loan exceeded 80 percent of the Property's value in violation of Tex. Const. art. XVI, § 50(a)(6)(B),[8] arguing that the claim is time-barred.  (doc. 6 at 14–15.)

Plaintiff contends that the deed of trust is invalid because his home equity loan violated the Texas Constitution's prohibitions against home equity loans in excess of a 80 percent loan to value ratio, "as well as various other specific requirements and restrictions pertinent to home equity loans."[9]  (doc. 1-2 at 17.)

Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the complaint."  *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

---

[7]Although MERS lists and briefs this claim after addressing Plaintiff's quiet title claim on the merits, it is addressed first because Plaintiff's quiet title claim is based on this claim as well as its "holder of the note" claim.

[8] Section 50(a)(6) of the Texas Constitution places numerous restrictions on home mortgages, and subsection 50(a)(6)(B) in particular prohibits loans that, when added to the principal balances of all other liens, exceed 80 percent of the home's fair market value.  Tex. Const. Ann. art. XVI, § 50(a)(6)(B) (West 2006).  A debtor may give the lender notice of a constitutional violation, and the lender has 60 days to cure it.  *Id.* § 50(a)(6)(Q)(x).  If the lender fails to correct a defect during the 60-day window, it forfeits all principal and interest on the loan.  *Id.*

[9] Plaintiff's allegation that Defendant violated "other specific requirements and restrictions pertinent to home equity loans" under the Texas Constitution appears to refer to the requirements and restrictions under § 50(a)(6), since that is the section of the Texas Constitution that deals with home equity loans.

### 1.      *Applicable Limitations Period*

Section 50(a)(6) of the Texas Constitution does not include an express statute of limitations. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013), *cert. denied*, 2013 WL 3193331 (U.S. Oct. 7, 2013).  Texas law provides for a "residual" four-year limitations period that applies in "[e]very action for which there is no express limitations period, except an action for the recovery of real property."[10] Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008).  In *Priester*, the Fifth Circuit acknowledged that "the Texas Supreme Court ha[d] not [yet] addressed whether [the] residual limitations period applies to defects in homestead liens," but found that the intermediate appellate courts that had addressed the issue had held in the affirmative.  *Priester*, 708 F.3d at 673.  Citing to various Texas cases "that had applied the residual limitations period to other types of [state] constitutional claims," the Fifth Circuit concluded that this limitations period also "applies to constitutional infirmities under Section 50(a)(6)."  *Id.* at 673–74.  Notably, the Court rejected the plaintiffs' argument that "no statute of limitations applies" to "liens created in violation of Section 50(a)(6)" because these are void *ab initio* rather than voidable.  *Id.* at 674. It cited to Texas Supreme Court precedent characterizing such liens as voidable, and found that this characterization was supported by "the constitutional scheme," since a "void" lien cannot be "voided" by future action, but the "cure provision" of § 50(a)(6)(Q)(x) allows home equity loans to be voided at a time after their creation.  *Id.* n.4 (citations omitted).[11]

---

[10]  Plaintiff has not yet lost ownership or possession of the Property.  Accordingly, this exception is inapplicable here.

[11]  The court agreed with the lower courts' reasoning that even "constitutional rights may be subjected to [] time limitations" because they are "encumbered by the same problems as are other types of claims—they may become stale as do other claims, and bring with them the associated problems with overdue lawsuits, such as faded memories, departed witnesses, and misplaced evidence." *Priester*, 708 F.3d at 673 (citations and internal quotation marks omitted).

Although *Priester* involved different subsections of § 50(a)(6), federal district courts have applied its holding to actions under § 50(a)(6)(B).  *See, e.g., Cypert v. USBC Bank USA Nat. Ass'n*, No. 3:13-CV-1032-D, 2013 WL 5822339, at *2 (N.D. Tex. Oct. 30, 2013) (Fitzwater, C.J.); *Ausmus v. Deutsche Bank Trust Co. Nat. Ass'n*, No. 3:13-CV-148, 2013 WL 3938515, at *3 (S.D. Tex. July 29, 2013); *Underwood v. Wells Fargo Bank, N.A.*, No. CIV.A. H:12-3437, 2013 WL 3788094, at *2 (S.D. Tex. July 18, 2013).[12]  The Court agrees that *Priester* may be applied to all subsections of § 50(a)(6).  As the court in *Ausmus* explained, "the language in *Priester* is broad enough to subject all alleged violations of section 50(a)(6)'s numerous subsections to the residual limitations period . . . and there is no principled basis for distinguishing the various subsections for limitations purposes."  *Ausmus*, 2013 WL 3938515, at *3 n.3.    Accordingly, Plaintiff's claim under § 50(a)(6)(B) is subject to Texas's residual limitations period.  To state a claim for relief, it must appear from the face of his complaint that he filed suit within four years after the claim accrued.  *See Priester*, 708 F.3d at 674; *Simmons*, 2010 WL 2473840, at *4.

### 2.    *Claim Accrual*

The Texas constitution does not "define the accrual date" for purposes of § 50(a)(6).  *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas,  2008, no pet.).  In *Priester*, the Fifth Circuit first noted that the general rule in Texas, known as the "injury rule," holds that a "cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur."  *Priester*,708 F.3d at 675 (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).  It also noted that

---

[12]  The plaintiffs in *Priester* alleged that their home equity loan violated § 50(a)(6)(M)(i) because the "closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company", and that it violated § 50(a)(6)(N) because "they did not receive notice of their rights twelve days before closing as required by the state constitution."  *Priester*, 708 F.3d at 671.

the "discovery rule" is a "very limited" exception that "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim."[13]  *Id.* (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). Noting that state and federal district "courts ha[d] applied the injury rule rather than the discovery rule in every case in which they ha[d] applied limitations to Section 50(a)(6) violations," the Fifth Circuit "conclude[d] that the legal injury rule applies to the creation of unconstitutional liens."  *Id.* at 675.  Consequently, it held that a cause of action for violations of § 50(a)(6) accrues on the date of the "lien's closing," rather than on the date that the plaintiff discovers the violations.[14]  *Id.*  at 675–76 (citations omitted).

Here, Plaintiff acknowledges that the lien was created on September 20, 2006.  (doc. 1-2 at 17.)  The copy of the deed of trust attached to MERS's motion indicates that Plaintiff closed on his home equity loan on that date. (doc. 6-1 at 14-15.)  The deed of trust shows the principal loan amount to be $255,200.00.  (*Id.* at 1.)  If the loan exceeded 80 percent of the Property's fair market value on September 20, 2006, then any violation of § 50(a)(6)(B) occurred on that date.  *See Priester*, 708 F.3d at 675–76; *Underwood*, 2013 WL 3788094, at *2 (holding that the plaintiffs' claim under §50(a)(6)(B) accrued on the date of closing; noting that on that date the plaintiffs "knew whether the loan was more than eighty percent of the fair market value of the home").  Accordingly, limitations began to run on that date and expired on September 20, 2010.  Because Plaintiff did not

---

[13]  Texas courts apply the discovery rule only in those cases where the nature of the plaintiff's injury is "inherently undiscoverable," meaning that "it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured."  *Priester*, 708 F.3d at 676 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)).

[14]  The Fifth Circuit further concluded that *Priester* was not "one of those 'rare' instances in which the discovery rule applie[d]" because there was nothing in the transaction "that made the [plaintiffs'] injury undiscoverable" since on the date of closing "they knew that the closing documents were signed in their living room and that they were not given notice of their rights." *Priester*, 708 F.3d at 675–76.

file suit until September 9, 2013, any claim under § 50(a)(6)(B) is time-barred and fails as a matter of law.  *See Cypert*, 2013 WL 5822339, at *2 (dismissing with prejudice the plaintiffs' claim under § 50(a)(6)(B) because it was time-barred).  To the extent Plaintiff's claim to quiet title is based on this claim, MERS's motion to dismiss the quiet title claim on this basis should be granted.

## D.     Suit to Quiet Title

MERS also seeks to dismiss Plaintiff's quiet title claim for failure to state a claim.  It contends that Plaintiff fails to "allege specific facts supporting the validity of his title to the Property with 'sufficient certainty.'" (doc. 6 at 17, 18.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title,

not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff contends that the deed of trust under which Defendants and American Brokers's assigns assert an interest "interferes with his title, [and] although appearing valid on its face, is in fact invalid and of no force or effect." (doc. 1-2 at 17.)  To establish his superior title and challenge any claim to the Property by part of the Defendants, he states that neither the Defendants nor American Brokers's assigns is the holder of the deed of trust, and the home equity loan violates the Texas Constitution's prohibitions against home equity loans in excess of a 80 percent loan to value ratio.  (*Id*.)  These conclusory allegations fail to raise a reasonable inference that Plaintiff has superior title or that MERS's claim to the Property is invalid or unenforceable.  Accordingly, MERS's motion to dismiss Plaintiff's suit to quiet title on the basis that it fails to state a claim should be granted.  *See Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-cv-2184-G, 2013 WL 1187156, *12 (dismissing quiet title claim that was based on the plaintiff's allegation that defendant was not the holder in due course of the note and that its lien on the property constituted an adverse interest to his title); *Cole v. Fed. Home Loan Mortg. Corp*., No. 3:11-cv-1833-M-BK, 2012 WL 555194, at *3(N.D. Tex. Jan. 23, 2012), *rec. adopted*, 2012 WL 556055 (N.D.Tex. Feb. 21, 2012)(dismissing quiet title claim that were entirely premised on the plaintiff's allegation that the defendant was not the holder of the note and therefore not "entitled to enforce the Deed of Trust").  Plaintiff's claim is subject to dismissal for failure to state a claim, and MERS's motion to dismiss the claim on this basis is granted.[15]

---

[15]MERS also contends that Plaintiff's quiet title claim fails to state a claim because Plaintiff failed to tender, or offer to tender, the full amount owed on his mortgage. (doc. 6 at 18.)  Because Plaintiff's suit is otherwise subject to dismissal for failure to state a claim, it is unnecessary to reach this argument.

E.     **Declaratory Judgment**

MERS next urges dismissal of Plaintiff's request for declaratory judgment, arguing that

Plaintiff asserts no substantive claim that survives dismissal.  (doc. 6 at 20.)

Plaintiff's first amended petition seeks relief under the Texas Declaratory Judgments Act,

codified in §§ 37.001-37.011 of the Texas Civil Practice & Remedies Code.   (*See* doc. 1-2 at 1.)

"The Texas act is a procedural, rather than substantive, provision, and would generally not apply to

a removed action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D.

Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).

However, in light of removal from state court, the action may be construed as one brought under the

federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan*

*Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory

judgment action is filed in state court and is subsequently removed to federal court, it is converted

to one brought under the federal Declaratory Judgment Act").

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within

its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought."  28 U.S.C. § 2201.  The federal Declaratory Judgment

Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to

obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs*

*Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009)

(Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and

not a command, and allows federal courts broad (not unfettered) discretion to grant or refuse

18

declaratory judgment.  *Id.*

Here, Plaintiff seeks a declaration that the deed of trust is invalid and unenforceable.  (doc. 1-2 at 17.)  He has alleged no facts giving rise to a plausible substantive claim or suggesting a present genuine controversy between the parties, and MERS's motion to dismiss his request for declaratory judgment should be granted.[16]  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5-6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

### III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, a court may appropriately dismiss an

---

[16]MERS also argues that Plaintiff comes to court with unclean hands because he is undeniably in default of his obligation to timely repay his mortgage, and therefore he is not entitled to a declaratory judgment.  (doc. 6 at 20.) Because Plaintiff fails to state any viable claim, and Defendant's motion to dismiss Plaintiff's request for declaratory judgment should be granted on that basis, it is unnecessary to reach this argument.

action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

All of Plaintiff's claims in the first, second, and current lawsuits are based on MERS's assignment of the note and deed of trust, and BOA's attempt to foreclose on the Property. His claims for quiet title and declaratory judgment in the first action were dismissed with prejudice for failure to state a claim. *See Warren*, 2012 WL 3020075, at *8. His claims in the second action, e.g., for wrongful foreclosure and violations of the FDCPA and the TDCPA, were also dismissed with prejudice. *Warren,* 2014 WL 1315855, at *6. Plaintiff's quiet title and declaratory judgment claims in the current action are not only based on theories and claims that have been dismissed with prejudice in the prior lawsuits, but they fail because they are factually unsupported. Moreover, any claim for violation of the Texas Constitution fails as a matter of law because it is barred by the statute of limitations. It appears that he has alleged his best case, and an opportunity to amend is therefore unwarranted.

## IV. RECOMMENDATION

MERS's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against it should be dismissed with prejudice. The Court should also *sua sponte* dismiss all of Plaintiff's claims against defendant American Brokers for failure to state a claim.[17]

---

[17]  Plaintiff named American Brokers as a defendant in this action, but it does not appear that it was ever served (*see* doc. 1-2 at 13), and it has not appeared in this action. The claims against American Brokers are intertwined with those against MERS. The Court may *sua sponte* consider and dismiss Plaintiff's claims against American Brokers along with those against MERS on its own motion under Rule 12(b)(6) as long as Plaintiff is given notice of the Court's intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *see also Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (explaining that a "court has the authority to consider the sufficiency of a complaint and dismiss an action on its own motion as long as the procedure employed is fair") (internal quotations omitted). The fourteen days allowed for filing objections to the recommended dismissal ensures that the procedure is fair by providing Plaintiffs with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

**SO RECOMMENDED on this 2nd day of September, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21